USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

CONSUMER FINANCIAL PROTECTION
BUREAU,

                              Plaintiff,

          -against-

PREMIER CONSULTING GROUP LLC and
LAW OFFICE OF MICHAEL LUPOLOVER,

                            Defendants.
---------------------------------------------------------------X

1:13-cv-3064 (JLC)

[PROPOSED] STIPULATED FINAL
JUDGMENT AND ORDER

       The Consumer Financial Protection Bureau (the Bureau) commenced this civil action to obtain injunctive and monetary relief and civil penalties from Premier Consulting Group LLC, a/k/a Premier Consultant Group LLC, ("Premier") and the Law Office of Michael Lupolover (collectively, "Defendants"). The Complaint alleges violations of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310, in connection with the marketing and sale of debt-relief services.

       The parties, by and through respective counsel, agree to the entry of this Stipulated Final Judgment and Order ("Order"). Defendants waive: any right to seek judicial review or to otherwise challenge or contest the validity of this Order; and any right that may arise in this case under the Equal Access to Justice Act, 28 U.S.C. § 2412.

## FINDINGS AND CONCLUSIONS

    1.     The Bureau is an agency of the United States created by 12 U.S.C. § 5491(a). It has independent litigating authority, 12 U.S.C. § 5564(a) and (b), including to enforce the TSR as it applies to persons subject to the CFPA, 12 U.S.C. § 5531(a); 15 U.S.C. §§ 6102(c)(2), 6105(d).

    2.     Premier is a for-profit company with offices at 120 Sylvan Avenue, Suite 300,

Englewood Cliffs, NJ 07632.

3. The Law Office of Michael Lupolover is a law firm located at 120 Sylvan Avenue, Suite 300, Englewood Cliffs, NJ 07632.

4. Since at least September 2010, Defendants have marketed and sold debt-relief services to consumers. Such debt-relief services are a consumer financial product or service. 12 U.S.C. § 5481(15)(A)(viii)(II). Defendants are therefore "covered persons" under the CFPA. 12 U.S.C. § 5481(6).

5. This Court has subject-matter jurisdiction over this action because it is brought under a federal consumer financial law, 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

6. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c), and 12 U.S.C. § 5564(f).

7. The Complaint states a claim upon which relief can be granted for Defendants' alleged violations of the TSR, 16 C.F.R. § 310.4(a)(5)(i), and sections 1031(a) and 1036(a)(1)(A) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(A).

8. The Bureau and Defendants agree to entry of this Order, without adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint to the date this Order is entered.

9. Defendants do not admit or deny any of the allegations in the Complaint or this Order. However, for the purposes of this Order, Defendants admit the facts necessary to establish the Bureau's jurisdiction over Defendants and the subject matter of this action.

10. The terms and provisions of this Order shall be binding upon, and inure to the benefit of, the parties hereto and their successors or assigns in interest.

11. Entry of this Order is in the public interest.

## DEFINITIONS

The following definitions apply to this Order:

12. **"Advance Fee"** means any fee or consideration requested or received by a Debt Relief Service Provider from a Consumer for any Debt Relief Service, whether directly or indirectly, that occurs before: (a) the Debt Relief Service Provider has renegotiated, settled, reduced, or otherwise altered the terms of a debt pursuant to a settlement agreement, debt management plan, or other valid contractual agreement executed by the Consumer; and (b) the Consumer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the Consumer and the creditor or debt collector.

13. **"Consumer"** means an individual or an agent, trustee, or representative acting on behalf of an individual.

14. **"Debt-Relief Service"** means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a Consumer and one or more creditors or debt collectors, including but not limited to, a reduction in the balance, interest rate, or fees owed by a person to a creditor or debt collector.

15. **"Debt-Relief Service Provider"** or **"DRSP"** means any Person that offers or provides any Debt-Relief Service.

16. **"Effective Date"** means the date this Order is entered.

17. **"Enforcement Director"** means the Assistant Director of the Office of Enforcement for the Consumer Financial Protection Bureau, or his or her delegee.

18. **"Person"** means any individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

19. **"Related Consumer Action"** means a private action by or on behalf of one or

more Consumers or an enforcement action by another governmental agency brought against Respondent based on substantially the same facts as described in the Complaint.

20.    "Telemarketing" means a plan, program, or campaign that is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. The term does not include the solicitation of sales through the mailing of a catalog which: contains a written description or illustration of the goods or services offered for sale; includes the business address of the seller; includes multiple pages of written material or illustrations; and has been issued not less frequently than once a year, when the person making the solicitations does not solicit customers by telephone but only receives calls initiated by customers in response to the catalog and during those calls takes orders only without further solicitation. For purposes of the previous sentence, the term "further solicitation" does not include providing the customer with information about, or attempting to sell, any other item included in the same catalog that prompted the customer's call or in a substantially similar catalog.

## ORDER

### A.    Injunction Against Taking Advance Fees or Otherwise Violating the TSR

IT IS THEREFORE ORDERED that,

21.    Defendants, their officers, agents, servants, employees, and all persons who are in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, are permanently restrained and enjoined from violating the TSR, 16 C.F.R. § 310, including by requesting or receiving unlawful Advance Fees.

B.  Compliance Plan

IT IS THEREFORE FURTHER ORDERED that,

22. Within 120 days of the Effective Date, each of the Defendants must submit to the Enforcement Director for review and determination of non-objection a comprehensive compliance plan designed to ensure that Defendants' Debt-Relief Services comply with all applicable Federal consumer financial laws and the terms of this Order. The compliance plans must include, at a minimum:

   a. Detailed steps for addressing each action required by this Order;
   b. Comprehensive written policies and procedures designed to prevent violations of the TSR, 16 C.F.R. pt. 310, sections 1031(a) and 1036(a) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a), or other Federal consumer financial laws, and associated risks to Consumers;
   c. Effective training programs that include regular and specific training regarding the TSR, Federal consumer financial laws, and associated risks to Consumers;
   d. Enhanced and documented compliance monitoring processes;
   e. Effective Consumer complaint monitoring processes; and
   f. Specific timeframes and deadlines for implementation of the steps described above.

23. The Enforcement Director will have the discretion to make determinations of non-objection to each Compliance Plan or direct a Defendant to revise it. If the Enforcement Director directs a Defendant to revise a Compliance Plan, the Defendant must make the revisions and resubmit the Compliance Plan to the Enforcement Director within 30 days.

24. After receiving notification that the Enforcement Director has made a determination of non-objection to a Compliance Plan, a Defendant must implement and adhere to the steps, recommendations, deadlines, and timeframes outlined in the Compliance Plan.

### C. Customer Information

IT IS THEREFORE FURTHER ORDERED that,

25. Defendants, and their officers, agents, servants, employees, and attorneys who receive actual notice of this Order, whether acting directly or indirectly, may not disclose, use, or benefit from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account) that a Defendant obtained before the Effective Date in connection with debt-settlement services. However, customer information may be disclosed if requested by a government agency or required by law, regulation, or court order.

### D. Order to Pay Civil Money Penalty

IT IS THEREFORE FURTHER ORDERED that,

26. Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), and taking into account the factors set forth in 12 U.S.C. § 5565(c)(3), Defendant Premier must pay a civil money penalty of $69,075 to the Bureau.

27. Defendant Premier must pay the civil money penalty by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

28. Defendant Premier must pay this amount according to the following schedule:

   a. within 10 days of the Effective Date, $23,025;

   b. by March 9, 2015, $23,025; and

   c. by June 8, 2015, $23,025.

29. The civil money penalty paid under this Order will be deposited in the Civil Penalty Fund of the Bureau in accordance with Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

30. Defendant Premier must treat the civil money penalty paid under this Order as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendant Premier may not:

6

   a. Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

   b. Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

31. To preserve the deterrent effect of the civil money penalty, in any Related Consumer Action, Defendants may not argue that Defendants are entitled to, nor may Defendants benefit by, any offset or reduction of any compensatory monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action ("Penalty Offset"). If the court in any Related Consumer Action grants such a Penalty Offset, Defendants must, within 30 days after entry of a final order granting the Penalty Offset, notify the Bureau, and pay the amount of the Penalty Offset to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

32. In the event of any default on Defendant Premier's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

33. Defendant Premier must relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law and no part of the funds may be returned to Defendant Premier.

34. Under 31 U.S.C. § 7701, Defendant Premier, unless it already has done so, must furnish to the Bureau its taxpayer identifying numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

35. Within 30 days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, Defendants must notify the Enforcement Director of the final judgment, consent order, or settlement in writing. That notification must indicate the amount of redress, if any,

that Defendants paid or are required to pay to Consumers and should describe the Consumers or classes of Consumers to whom that redress has been or will be paid.

36. Under Section 604(a)(I) of the Fair Credit Reporting Act, 15 U.S.C.§ 1681 b(a)(1), any consumer reporting agency may furnish a consumer report concerning Defendant Premier to the Bureau, which shall be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

E. Reporting Requirements

IT IS THEREFORE FURTHER ORDERED that,

37. Each Defendant must notify the Bureau of any development that may affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against the Defendant; or a change in the Defendant's name or address.

38. Within 7 days of the Effective Date, each Defendant must:

   a. Designate at least one telephone number and an email, physical, and postal address as points of contact, which the Bureau may use to communicate with the Defendant;

   b. Identify all businesses for which the Defendant is the majority owner, or that the Defendant directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

   c. Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales;

39. Each Defendant must report any change in the information required to be submitted under Paragraph 38 at least 30 days before the change or as soon as practicable after learning about the change, whichever is sooner.

8

40. Within 90 days of the Effective Date, and again one year after the Effective Date, each Defendant must submit to the Enforcement Director an accurate written compliance progress report (Compliance Report), which, at a minimum, describes in detail the manner and form in which Respondent has complied with this Order.

41. After the one-year period, Respondent must submit to the Enforcement Director additional Compliance Reports within 14 days of receiving a written request from the Bureau.

F. Order Distribution and Acknowledgement

IT IS THEREFORE FURTHER ORDERED that,

42. Within 7 days of the Effective Date, each Defendant must submit to the Enforcement Director an acknowledgment of receipt of this Order, sworn under penalty of perjury.

43. Within 30 days of the Effective Date, each Defendant shall deliver a copy of this Order to any managers, employees, service providers, or other agents or representatives of Defendants who have responsibilities related to the subject matter of the Order.

44. For 3 years from the Effective Date, each Defendant must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section E, as well as to any managers, employees, service providers, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

G. Recordkeeping

IT IS THEREFORE FURTHER ORDERED that,

45. Defendants must create, for at least 3 years from the Effective Date, the following business records:

> a. All documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Bureau.
> b. For each individual Consumer to whom a Defendant provides Debt-Relief Services: the Consumer's name, address, phone number, email address; the date

  the Consumer enrolled in the Debt-Relief Service; all payments and transactions related to the Consumer; and, if applicable, the date and reason the Consumer left the Debt-Relief Service program.

  c. Copies of all sales scripts; training materials; advertisements; websites; and other marketing materials; and including any such materials used by a third party on behalf of a Defendant.

  d. For Defendants' Debt-Relief Services, accounting records showing the gross and net revenues generated by the Debt-Relief Services.

  e. All Consumer complaints and refund requests (whether received directly or indirectly, such as through a third party), and any responses to those complaints or requests.

  f. Records showing, for each employee providing services related to the Defendants' Debt-Relief Services, that person's: name; telephone number; email, physical, and postal address; job title or position; dates of service; and, if applicable, the reason for termination.

  g. Records showing, for each service provider providing services related to the Defendants' Debt-Relief Services, the name of a point of contact, and that person's telephone number; email, physical, and postal address; job title or position; dates of service; and, if applicable, the reason for termination.

46. Defendants must retain the documents identified in Paragraph 45 for at least 3 years.

47. Defendants must make the documents identified in Paragraph 45 available to the Bureau upon the Bureau's request.

H. Notices

IT IS THEREFORE FURTHER ORDERED that,

48. Unless otherwise directed in writing by the Bureau, Defendants must provide all submissions, requests, communications, or other documents relating to this Order in writing, with

the subject line, "*In re* Premier Consultant Group LLC, *et al.*, File No 2012-0371-02," and send them either:

    a. By overnight courier (not the U.S. Postal Service), as follows

        Assistant Director for Enforcement
        Consumer Financial Protection Bureau
        ATTENTION: Office of Enforcement
        1625 Eye Street, N.W.
        Washington D.C. 20006; or

    b. By first-class mail to the below address and contemporaneously by email to Enforcement_Compliance@cfpb.gov.

        Assistant Director for Enforcement
        Consumer Financial Protection Bureau
        ATTENTION: Office of Enforcement
        1700 G St., N.W.
        Washington D.C. 20552

## I. Cooperation with Bureau Counsel

**IT IS THEREFORE FURTHER ORDERED** that,

    49. Defendants must cooperate fully with the Bureau in this matter and in any investigation related to or associated with the conduct described in the Complaint. Defendants must provide truthful and complete information, evidence, and testimony. Defendants must cause their officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that the Bureau may reasonably request upon 5 days written notice, or other reasonable notice, at such places and times as the Bureau may designate, without the service of compulsory process.

J. Compliance Monitoring

IT IS THEREFORE FURTHER ORDERED that,

50. Within 14 days of receipt of a written request from the Bureau, Defendants must submit additional compliance reports or other requested information, which must be made under penalty of perjury; provide sworn testimony; or produce documents.

51. For purposes of this Section, the Bureau may communicate directly with Defendants, unless Defendants retain counsel related to these communications.

52. Defendants must permit Bureau representatives to interview any employee or other person affiliated with a Defendant who has agreed to such an interview. The person interviewed may have counsel present.

53. Nothing in this Order will limit the Bureau's lawful use of compulsory process, under 12 C.F.R. § 1080.6.

54. For the duration of the Order, Defendants agree to be subject to the Bureau's supervisory authority under 12 U.S.C. § 5514. Consistent with 12 C.F.R. § 1091.111, Defendants may not petition for termination of supervision under 12 C.F.R. § 1091.113.

K. Administrative Provisions

IT IS THEREFORE FURTHER ORDERED that,

55. Calculation of time limitations will run from the Effective Date and be based on calendar days, unless otherwise noted.

56. The provisions of this Order will be enforceable by the Bureau. For any violation of this Order, the Bureau may impose the maximum amount of civil money penalties allowed under section 1055(c) of the CFP Act, 12 U.S.C. § 5565(c). In connection with any attempt by the Bureau to enforce this Order in federal district court, the Bureau may serve Defendants wherever Defendants may be found and Defendants may not contest the court's personal jurisdiction over them.

57. This Order contains the complete agreement between the parties. The parties have made no promises, representations, or warranties other than what is contained in this Order. This Order supersedes any prior oral or written communications, discussions, or understandings.

58. Nothing in this Order may be construed as allowing Defendants, or their officers or employees to violate any law, rule, or regulation.

L.  Retention of Jurisdiction

IT IS THEREFORE FURTHER ORDERED that,

59. The Court will retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.


**SO STIPULATED**

CONSUMER FINANCIAL PROTECTION BUREAU

_Stefanie Isser Goldblatt_
Stefanie Isser Goldblatt
Attorney for Plaintiff Consumer Financial Protection Bureau

PREMIER CONSULTING GROUP LLC

LAW OFFICE OF MICHAEL LUPOLOVER

_Michael Bachner_
Michael Bachner
Attorney for Defendants
Premier Consulting Group LLC
Law Office of Michael Lupolover

WHEREAS, THE PROPOSED ORDER APPEARS TO BE FAIR AND REASONABLE, AND WHEREAS, THE PUBLIC INTEREST WOULD NOT BE DISSERVED,

**IT IS SO ORDERED.**

SEE SEC v CITIGROUP GLOBAL MARKETS, INC. 752 F.3d 285, 294 (2d Cir. 2014)

DATED:
DECEMBER 4, 2014
NEW YORK, NEW YORK

_James L. Cott_
U.S.M.J.